## WIGTON *et al. v.* THE BOMBAY.

*(Circuit Court, E. D. Louisiana.* May 31, 1889.)

MARITIME LIENS—SUPPLIES—CHARTER-PARTY.

>   Persons in a foreign port who furnish the charterers of a vessel coal necessary to the completion of the voyage, relying on the credit of the vessel for payment, in ignorance of the terms of the charter-party, have a lien on the vessel for the amount of the supplies, whether, under the charter-party, the charterers are owners *pro hac vice,* or are merely sailing it as agents of the owners.

In Admiralty. Libel for supplies. On appeal from district court, *ante,* 512.

*Bayne, Denegre & Bayne,* for libelants.

*J. McConnell,* for claimants.

PARDEE, J. Upon the facts of this case as presented by the evidence in the record, the decree of the district court should be affirmed. If, under the terms of the charter-party, the charterers became and were

the owners *pro hac vice*, as seems to be clearly and conclusively shown by the district judge in his two opinions in the record, then, confessedly, the libelants have a maritime lien for the supplies furnished. On the other hand, if, as the learned proctor for claimants contends, by the charter-party and the proceedings under it the owners did not part with possession, but remained in control of the ship, and as owners, through their own agents, sailed the ship for their own account, then the case shown is one where, in a foreign port, by owners' consent, (if not by their procurement,) the libelants furnished their ship, relying on its credit, with necessary supplies, without which the voyage could not be prosecuted, and which they, through their master, accepted and used for the benefit of the ship; on which state of affairs it would seem that, under the well-settled principles of maritime law, a maritime lien on the ship resulted. In suits where third parties, such as shippers and material-men, have dealt with the ship, and seek to hold owners or charterers personally liable, and in suits to adjust the rights, differences, and liabilities between owners and charterers, it may be material to settle the sometimes nice question whether by the charter-party, the owners retain possession and control of their own ship, or whether the charterers became, under such contract, the owners *pro hac vice*. But in cases where shippers or material-men, in a foreign port, who have dealt with the ship on its own credit, in the ordinary course of business, without notice of the terms of the charter-party, only seek to enforce the liens accorded by the general maritime law, I doubt if it is at all material to inquire what may be the terms and conditions of any charter-party existing between owners and charterers.

The following decree will be entered in this case: This cause came on to be heard upon the record of appeal, and was argued, whereupon, the court being advised in the premises, it is ordered, adjudged, and decreed that the libelants, Robert B. Wigton, William Wigton, and Frank N. Wigton, the partners composing the commercial firm of R. B. Wigton & Sons, do have and recover from the steam-ship Bombay the sum of $1,868.75, with legal interest thereon from April 7, 1887, until paid, and all costs of suit in this court and in the district court. And whereas, on a claim made by A. B. Bolt, master and lawful bailee of the ship Bombay, the said steam-ship Bombay was released upon bond in the sum of $2,500, with A. K. Miller & Co. as sureties thereon, it is further ordered, adjudged, and decreed that the said A. B. Bolt, master, and A. K. Miller & Co., sureties on the release bond, be condemned *in solido* to pay the aforesaid judgment, interest, and costs, and that execution may issue therefor within five days after signing this decree.